Case number 25-1060 et al. Basin Electric Power Cooperative Petitioner v. Federal Energy Regulatory Commission. Ms. Halpern for the petitioner, Mr. Stateland for the petitioner intervener, Mr. Shainer for the respondent, and Ms. Travers for the respondent intervener. Good morning. Good morning, your honors. May it please the court. My name is Jessie Halpern, and I represent petitioner Basin Electric Power Cooperative, a rural electric cooperative. I'd like to reserve 1 minute of my time for rebuttal, and before I begin my argument, I'd like to alert the court that we filed an errata to remove an erroneous description of American municipal power v. FERC from our initial brief. The issue before the court today is the commission's improper and unreasoned reading of a long-term, long-standing, all-requirements contract that serves as the linchpin of a cooperative utility's credit, stability, and structure, and that ensures the cooperative's continued ability to build necessary transmission and generation facilities to serve its members. Unlike run-of-the-mill requirements contracts between private parties, the unique nature of the contract at issue here requires that it be viewed within the context of the entire cooperative structure, and as the commission itself has stated, it is necessary to have this contract interpreted consistently and fairly across all cooperatives, not just with respect to Northwest Rural. Do you read sections 9 and 14 to be ambiguous at all? I do not believe the sections are ambiguous, and I believe that the core error in the case is straightforward. Section 9, that the commission orders before this court wrongly interpret, does not merely mention a pro rata payment. It expressly allocates to Basin Electric two additional protections that the commission never analyzed. The first is that Tri-State must pay Basin Electric's other obligations and commitments as shall be determined by Basin Electric, and second, Tri-State shall otherwise comply with such reasonable terms and conditions as Basin Electric shall require. This is under the second section, second sentence, apologies, of section 9, not the first sentence. And the commission treated those two operative phrases as background noise rather than a binding text in finding that Northwest Rural's exit does not breach the contract, which is not a permissible reading. In its own brief, the commission actually admits that on this record, the record before the commission, the commission could only, and I quote, find that Tri-State has not breached its obligations under section 9 to date, end quote. Despite that, the orders repeatedly state that there is no breach. They're very definitive. Ms. Halpern, so Basin is no longer within FERC's general jurisdiction. That is correct, Your Honor. So I'm wondering, do you expect that FERC will continue, will assert primary jurisdiction over the PPA? And if it does, is Basin concerned that that would later, would block a later breach of contract claim in district court? We are concerned that this would block a later claim in court. If they did assert primary jurisdiction over, or continue to assert primary jurisdiction over the PPA. Basin doesn't raise this argument, but I was wondering if this is like some background concern. Our concern is that the commission's interpretation allows all of Tri-State's members to exit in the eastern interconnection. And that will continue to happen. No, I understand that. Based on the Tenth Circuit opinion that relies on the commission's finding of no breach here. Right. But what the terms are for the exit and for any breach would otherwise be in the breach of contract claim in district court. However, I believe. With the FERC, FERC's decision wouldn't necessarily have preclusive effect there. Because courts have to interpret contracts de novo. We would likely argue that FERC would not have authority there. However, because it contributes to rates and terms and conditions that apply to a jurisdictional utility. It is likely that a jurisdictional utility would argue that the commission's order here does have preclusive effect. And regardless, Basin Electric was subject to the commission's jurisdiction at the time that the commission made this interpretation. And so there is an argument that the exits proposed at the time are authorized. Basin also argues that FERC's interpretation does not allow Basin to impose reasonable terms and conditions. I'm wondering what is Basin's support for that argument? I mean, I guess I'm not sure why such terms and conditions wouldn't be a part of any future for proceeding. The commission under the tri-state exit methodology has approved a two-year notice provision. Basin Electric, if it were to require a three-year notice provision, then we'd have a conflict or a five-year notice provision. We'd have a conflict between the reasonable terms and conditions that Basin Electric could impose. And that the commission has already authorized for exits. And regardless, the commission did not consider any reasonable terms and conditions. It simply found there was no breach.  But is there any other term or condition besides the number of years? I mean, I don't read the FERC decision to say anything about other terms and conditions that Basin could impose. It effectively dismisses them. It gives them no meaning, no affirmative content. Says that they cannot be construed to disable a transfer. Says that they can't serve as a veto. They must be provided in such a way that would permit an exit effectively. I guess that doesn't say what the terms and conditions are, though. And neither does the FERC order. It doesn't grapple with what those terms and conditions would be. It simply says there is no breach. If you look at paragraphs 73 and 82 of the order on complaint, paragraphs 25, 27, and 30 of the rehearing order, they affirmatively and definitively find, regardless of the conditions, there's no breach. Thank you. Misha Zaitlin for Tri-State, which remains FERC jurisdictional. FERC accepted primary jurisdiction here to resolve, in FERC's own words, the extent to which Tri-State's obligations to Basin under Section 9 impact Northwest rural's termination rights. FERC's answer to the question it poses is so incomplete as to violate the APA and the State Farm Doctrine. FERC's orders here just say that Northwest rural can leave Tri-State without causing a breach so long as it pays or prorates a share of Basin's outstanding indebtedness. Surely Northwest rural has to pay that, but there's the other provisions that allow Basin to impose more cost on Tri-State. And as my colleague just pointed out, the FERC's order doesn't opine on that at all, and that puts Tri-State, which remains FERC jurisdictional, in an impossible position. Under paragraph 583 of the Order on Initial Decision, the one the 10th Circuit upheld last month, Northwest rural must pay not only the prorated share of the indebtedness, but the prorated share of the entire PPA. Therefore, for FERC to reasonably answer the question it posed for itself when it took primary jurisdiction here, it would have to articulate an administrable method to figure out what that payment would be so there would not be a breach. Mr. Sullivan, we have many cases suggesting that agencies do not have to tackle an entire problem in one fell swoop, that they can take piecemeal approaches, both procedurally and substantively, and for any exit to occur, there still are going to be future FERC proceedings. So why can't Tri-State's concerns be addressed in those future proceedings? Why do they have to be addressed today? So FERC did do something limited. There are questions that remain open. I take your point on that. But there are, I think, necessarily going to be subsequent proceedings where those questions can be addressed. I appreciate your honor, but we're here constantly subject to this game of whack-a-mole. We keep asking FERC how we do this. They won't tell us. At this point, we've given Northwest Rural a buyout number. They're going to exit, you know, in nine months. So what happens if Basin imposes, Basin is no longer first jurisdictional, imposes additional terms and conditions on us? A court says we've got to pay that. I mean, there is a true-up mechanism that may or may not be sufficient to get the money back from Northwest Rural, several years down the line, if they're still solvent. I mean, this is a continuing problem. And with every single order, FERC issues, in every single docket, they say we're going to address it eventually. Well, in this case, they accept the primary jurisdiction, which they didn't have to do. And they said they're going to determine the extent to which Tri-State's obligation to Basin under Section 9 of the Basin PPA impact Northwest Rural's rights. This is the time to answer it. Otherwise, we could be left, you know, holding the bag with no way to get the money back that we've got to pay Basin and Northwest Rural may or may not be around to pass back. Do those practical problems for Tri-State make FERC's decision arbitrary and capricious? Respectfully, we think they do. I mean, State Farm is, in all things, considered inquiry. It's obviously with some amount of deference. But we would ask this court to vacate the orders under review so that FERC can fully answer the question that it posed to itself when it accepted a primary jurisdiction here. When you look at Section 9, I just want to ask you, Charlie, is it your view that Northwest Rural's withdrawal constitutes Tri-State's reorganization, consolidation, merger, sale, lease, or transfer of assets? Does it fit into any one of those particular categories? In this proceeding, nobody disputed that it did. FERC found that it did, and we did not dispute that in this proceeding. But what's the it? Like, what category are you looking at? I think the reasoning of FERC was that our assets with regard to the Eastern Inconnect are all requirements contracts with our members. And that's by a member exiting, that asset goes away. I think that's what the reasoning was. But you would look to it as a transfer of asset? I think that was FERC's reasoning here. Out of these categories. Yeah. Okay. And I'm being careful here. Obviously, we're being repeatedly sued by a basin. I don't know what's going to happen in other district court cases. But for purposes of this proceeding, we did not dispute that conclusion by FERC. Okay. All right. Thank you. Thank you. Good morning. Good morning, Your Honors. Houston Shaner for the Federal Energy Regulatory Commission. I'd like to start with Judge Child's last question, just to confirm. The commission did rely on the second sentence of Section 9 here. I believe all parties below agreed that Northwest withdrawal from Tri-State would constitute a sale or disposition of Tri-State assets, which means that the second sentence of Section 9 was triggered. I think, as this Court likely agrees, the language of that second sentence is quite clear, that as so long as Tri-State meets certain other conditions, which were not fully litigated below, that no breach has occurred. And that's for that reason Northwest failed. And to me, it's burden of proof. Judge Rau, I think you hit the nail on the head here. The orders here do not constrain basin's discretion in terms of imposing reasonable terms and conditions, other than saying the basin does not get a full veto on withdrawal of Tri-State members. And that's for two good reasons. One is that there's no need for the commission to go beyond that statement. And that's because the text is enough to stop it. We can see that there are conditions to a sort of a future breach that are clearly not fully litigated here. And the second is there's no adequate record for this case. Basin makes much of their concerns that they need lots of other – there could be lots of other terms and conditions out there, but no party tried to offer those terms. They're not in the record below. They're really not even raised in the opening brief on appeal. So the commission has left basin with lots of discretion. And I also point the Court's attention to the August 2025 and November 2025 commission orders and the exit fee proceedings. They're cited in the red brief. And there you'll see that the commission actually encourages the parties to begin discussing what these terms are, directs Tri-State to try to get the relevant information on outstanding debt or other obligations, including reasonable terms and conditions from basin, and gives Tri-State safeguards what to do in the case the basin is not cooperating there. Mr. Chair, what is your response to Mr. Saitlin's concerns that Tri-State is sort of caught between basin and Northwest, right? And if, you know, there's a lot of uncertainty as to what basin may require and what Northwest is required to pay, and, you know, they're just sort of left with this uncertainty that could drag on for years. I think, Judge Rowell, you adequately described this as a practical problem for Tri-State, but that's important because it is not a textual – It's a real problem. It's not a textual argument. These are, you know, entities that have to plan. But to the extent that there is a practical problem, that is for the exit fee proceedings, and much of this is already litigated in the four orders now affirmed by the Tenth Circuit. The rest of it is in the August 2025 and November 2025 exit fee proceedings. The Tri-State is also currently litigating for the Tenth Circuit. I believe they're still going forward with that. So to the extent that they think there are financial problems for Tri-State because of Northwest's withdrawal, they have plenty of opportunity to do that not only with the current petition for review in the Tenth Circuit, but in future commission proceedings as well. And Tri-State even made the point that there could be – before the commission proceedings as referenced in the August 2025 order, that there could be future commission proceedings as well to the extent needed. What is FERC's reasoning for proceeding in this piecemeal fashion here? I think it's largely because the posture of the case was given to FERC by Northwest filing a Section 206 complaint, and Section 206, as Your Honor knows well, requires the commission to make a determination as to whether or not a jurisdictional rate is just and reasonable. And if it is unjust and unreasonable, then we then have to set a new rate. Now, in this case, Northwest made the argument that the contract – the basin contract was unjust and unreasonable precisely because it blocked their exit. But in this case, that was predicated on the idea that there was – the premise that there was a breach of that contract. When the commission found that there was no breach of that contract, as my colleague mentioned in Paragraph 72 and 83, there was no need to proceed on to the just and reasonable analysis or offer any actual relief to Northwest. So I think the commission in that sense – the parties dictated how that was teed up. And, of course, prior to that, this issue did come up in the exit fee proceedings occasionally, but as the court well knows, basin was also litigating this in parallel in the district court for the District of North Dakota. And they may be preparing to do that in the future as well. So are you suggesting that Northwest's rules withdrawal is a transfer of assets? Correct. Okay. And I believe the parties agreed to that below. And I would also add there was some dispute as to whether or not it constituted all or a substantial portion of the assets. But the commission says, I believe in – I believe it's Paragraph 71 in the complaint order. I may have that slightly wrong. Maybe Paragraph 73. That the commission would assume for the purposes of argument that Northwest withdrawal would constitute a substantial portion. I'd also be happy to answer any of the court's questions on jurisdiction, if not, I have a couple of affirmative points there as well. Please proceed. Sure. I think there are two jurisdictional problems. I'll start with the smaller one. That's Tri-State's arguments. While Tri-State does begin with sort of the same textual hook in terms of regional terms and conditions, their argument is ultimately the polar opposite of Basin's here. And it even calls into question, I think, Tri-State's standing. As I understand it, Tri-State is saying that the commission failed to consider an important aspect of the problem. That aspect of the problem is not whether Northwest actually breached the contract. It's that even assuming not a breach, that puts Tri-State in a bad position, as Your Honor noted, practically. That's really a question for the exit fee proceedings. It is not the same argument that the commission, I'm sorry, that Basin raised here. You'll actually see that clearly from the orders. Here I believe it's paragraph 83 of the complaint order, I believe, where the commission actually says it's dealing with other issues besides the main contractual argument here, and that's the exact argument that Tri-State raises, beginning with Section B of their opening brief. And you also see in Section C of their opening brief, they quite directly ask the court to disagree with what is now a full 10-circuit panel, sustaining the exit fee methodologies. Methodology. Mr. Schroeder, do you, I don't know if you can speak to this, but do you expect that FERC will continue to assert primary jurisdiction over the VA? I would just be guessing, Your Honor, but I would point you to paragraph 69 of the complaint order, and particularly footnote 132, the citations there. And my apologies, I can't remember the exact citations, but I'm happy to pull them for you. The second case cited in footnote 132 and the surrounding text in paragraph 69 suggests that, but for the need to advance to a just and reasonable determination and potential reformation of the contract, the commission might not have accepted primary jurisdiction if it were simply a matter of interpreting a contract. So I think that might certainly suggest that that was the only hook for primary jurisdiction in this case, and if the basin agreement is no longer within the commission's rate jurisdiction under the Federal Power Act, presumably the commission might not accept primary jurisdiction. And so then those questions could be worked out in a breach of contract claim in public court. That's quite true. I would also point, Your Honor, to you mentioned preclusion earlier. I think really the starting point is Judge Williams' opinion in Alabama Municipal Distributor Group 2002, not the more recent pipeline case. In that opinion, Judge Williams notes that there's sort of a problem of circularity with basin standing on preclusive effect, and that's that preclusive effect often turns on the ability to have standing in the first case. So you need to determine that before you determine the preclusive effect of any agency orders or judgments affirming those orders. And so basin here is getting the analysis somewhat backwards. All right. Any concluding remarks? I think not, and I ask Your Honors to either dismiss or deny the petitions for review. Thank you for your time. Thank you. Good morning, Ms. Travers. Good morning, Your Honors. May it please the Court, I am representing Northwest Rural Public Power District, intervener for Respondent Firk in this matter. NRPPD supports the Commission's arguments on the merits. The Commission's interpretation of the Tri-State Basin PPA comports with its plain language and does not read any section out of the contract contrary to Basin's arguments. Rather, it is Basin's interpretation of the PPA that would render Section 9 meaningless. If it is correct that Tri-State's ability to dispose of its assets per the terms of Section 9 would render Section 14 of the contract meaningless, Basin has not stated what the point of Section 9 would possibly be. Rather, Section 9 provides a mechanism for Tri-State to transfer its assets by compensating Basin pursuant to Section 9's terms. Any argument that Tri-State's transfer of its assets would cause a backdoor exit for Tri-State to withdraw from the contract itself is a hypothetical situation that should not be the basis of a determination here. What do you think a court or Firk should do if that hypothetical situation were to occur? Section 9 actually provides Basin with compensation for any distribution of assets that Tri-State may attempt in the Eastern Interconnection. The contract has bargained for relief for Basin in that eventuality. All right. Any other questions? All right. Any concluding remarks? That is it for me. Thank you, Your Honors. Okay. Thank you. Ms. Halpern, we'll give you your rebuttal time. Thank you, Your Honors. The Commission's counsel said that no parties presented adequate conditions under Section 9. This highlights another issue with the orders here. If the Commission could not determine compliance with reasonable terms and conditions, its order finding no breach is at best premature and should be vacated. And the Commission's interpretation of the Tenth Circuit opinion that Mr. Shainer just shared ignores one key element of that opinion, which is that the Tenth Circuit relied on the Commission's findings in this case to determine that the methodology was appropriately applied to Eastern Interconnection members. Because the Commission's orders do not give weight to and reconcile all of the provisions of the contract, including all three sentences in Section 9, which need to be read independently, and as a cohesive whole, we ask this court to vacate the orders. All right. Thank you. The case is submitted.
judges: Wilkins; Rao; Childs